## PROMISSORY NOTE AND ACTION THEREON.

[Circuit Court of Huron County.]

W. L. MINZEY ET AL v. MARCY MANUFACTURING CO.

Decided, 1903.

*Promissory Note—Agreement to Pay in Labor—Suit on Note not Premature, When—Charge of Court—Evidence on Issue not in Pleadings—Errors not Affirmatively Appearing—Burden of Proof —Corporate Existence not Raised by General Denial.*

1. The execution and delivery of a promissory note to a creditor, who as a part of the same transaction enters into a written contract to employ the maker until the note becomes due six months thereafter, and for a further period of six months if the note is not paid at maturity, the two papers will be construed as a contract whereby the maker is to be employed until enabled to pay the note with his wages, and that his wages shall be applied on the note, and not that he shall be permitted to draw his wages as they become due and pay the note at maturity.

2. Where the maker of the note is discharged for justifiable cause, the payee is released from his obligation to receive payment in services, or to grant an extension of the note, and a suit on the note is not prematurely brought when begun within six months after maturity.

3. Where an issue is overlooked during the delivery of the charge to the jury, which is concluded just before the noon recess, it is not giving special prominence to that issue for the court to instruct the jury regarding it upon reconvening after the recess and without repeating the whole charge.

4. A reviewing court will not regard an objection to the hearing and submission of evidence to the jury on an issue not made in the pleadings, where the objection was first made in the petition in error; nor will it assume that there was error in the matter of the opening and close to the jury, where such error does not affirma-tively appear from the record; nor a claim of error in the matter

of burden of proof, where it does not appear that the party ob·
jecting was prejudiced thereby.

5. The fact that the defendant was examined on a matter not at issue
is not ground for a reversal of the judgment, where his answers
did not prejudice him before the jury; nor can he object to the
range taken in cross-examining a witness on an immaterial mat-
ter, when the witness was first offered and examined on the same
matter by the objecting party.

6. A general denial does not put in issue the incorporation of a plaint-
iff corporation.   The incorporation need not be established by
proof under such a pleading, and the issue can only be raised by a
special pleading.

PARKER, J.; HULL, J., and HAYNES, J., concur.

Error to the Court of Common Ple s of Huro 1 County.

The action in the court below was by the Marcy Manufactur-
ing Company against W. L. Minzey and Nancy J. Minzey upon
a promissory note.   The note is dated July 17, 1899, and is for
$241.05, payable seven months after date, with interest from
date at the rate of six per cent. per annum, payable annually.
W. L. Minzey, by his answe, admits that he executed and de-
livered to the plaintiff the promissory note described in the pe-
tition, but denies each and every other allegation in the petition
not expressly admitted.

One of the averments in the petition on behalf of the plaintiff
is that it is a corporation duly organized and existing under the
laws of the state of Indiana.

Nancy Minzey, who is the mother of W. L. Minzey and who
was surety for him upon this note, in her answer admits the
execution of the promissory note described in the petition, but
she denies each and every other allegation set forth in the peti-
tion not expressly admitted.   It is said that she does not, there-
fore, admit the delivery of the note.

Each defendant in a separate answer then proceeds to aver
facts relative to another writing which they say was signed by
the R. G. Marcy Manufacturing Company, the plaintiff, at the
time this note was given and which constituted a part of the
same transaction and contract, and they attach to their answers
a copy of that paper, which reads:

"BELLEVUE, O., July 18, 1899.

"We do hereby agree to give W. L. Minzey work on the road and in our factory at two dollars per day and expenses until a note of $241.05, dated July 17, '99, due in seven months, signed by himself and Mrs. Nancy J. Minzey, is paid, and we agree if this note is not paid when due to renew the balance for six months. THE R. G. MARCY MFG. CO.,

"J. A. ULLMAN, JR."

They aver, with respect to the circumstances under which these papers were executed, that W. L. Minzey had been engaged in business at Bellevue as a dealer in pumps, tanks, windmills and windmill supplies generally, and that he had become embarrassed and involved financially so that he could not continue his business; that he had become indebted to the plaintiff and others, and that he turned over all of his property to his creditors about this time, turning over a part to the plaintiff upon his indebtedness to them; that he gave this note for the balance that was unsatisfied by the turning over of such property; that he was not willing to give a note, and especially that his mother was not willing to sign it as his surety until the company had executed said paper in which they agreed to employ him upon the terms therein stated.

He avers, and his mother in her separate answer also avers, that the company employed him in pursuance of this contract and kept him in their employ less than a month and then discharged him without legal cause. The company deny that they discharged him without cause.

The cause was submitted to a jury, which returned a verdict in favor of the plaintiff below for the amount of the note and interest, and W. L. Minzey and his mother, Nancy J. Minzey, prosecute error here. They aver and contend that there was error prejudical to them in the proceedings in the court below in the receiving and in the rejection of evidence, and in the charge of the court; and that the verdict is against the weight of the evidence.

The first matter occurring upon the trial of which they complain was with respect to the determination of where the burden of proof rested. It appears that after the case was stated to the

jury, Mr. Vickery, attorney for the defendant below, said, ''We admit the execution of the note and its delivery and we also claim that we have the burden of proof.''

''COURT: The burden of proof is upon the plaintiff in this case.

''MR. VICKERY: We except to the ruling of the court in holding that the burden of the proof is on the plaintiff.''

That is all we find in the record upon the subject. The plaintiff then proceeded to introduce the note in evidence, also the certificate of incorporation of the company, and then put the general manager of the company upon the witness stand. who testified that the company was the owner of the note, and then it rested.

The complaint of the plaintiffs in error about this matter is that they were deprived of the opening and closing of the argument. It is urged on behalf of the defendant in error that the decision of the court below as to where the burden of proof rested was correct. It is said that under the pleadings it did not devolve upon the plaintiff to introduce the note in evidence nor to prove the incorporation of the company. We hold that under a denial of that character (a general denial) the plaintiff below is not put upon its proof to establish its incorporation. It requires a special pleading to raise that question. It is not very apparent at least that the plaintiff below was called upon to go ahead and prove anything under these pleadings, but we are not required to go into that question very carefully, or at all, for the reason that it does not appear that it was prejudicial to the defendant below to have the plaintiff below go ahead and make its proof. The thing they complain of is, that the plaintiff below was permitted to go ahead in the argument, and was permitted to close the argument; but that fact does not appear in this record.

It does not appear that at the close of the evidence this matter was brought to the attention of the court in any way, or that counsel for defendant desired to go ahead; nor does it appear (which is more essential, perhaps) that counsel for the defendant below did not go ahead in the making of the argument, and

did not close the argument. All we have upon the subject is, after the testimony is all set out, "and this was all the evidence offered by either party in the cause and thereupon the case proceeded to argument, after which the court charged the jury as follows."

The errors that may be taken advantage of are such as appear affirmatively upon the record, and we can not assume that the court committed the error of permitting counsel for the plaintiff below to open and close the argument. Furthermore, in looking at the motion for a new trial we find that there is nothing stated therein upon that subject. Nearly all of the grounds for a new trial that are provided by law are set forth here, but the ground that would cover this is not set forth.

It is also contended that this action was brought before the note had matured, or before the cause of action had matured, because of the provision in the other contract (which the evidence shows was executed at the same time, as part of the same contract), that if the note was not paid in full when due it was to be renewed for six months. It is said that it was not paid in full when due and that therefore they became entitled to a renewal for six months, which would carry it over to August, 1902, whereas the action was commenced in March, 1902. But whether that objection is well taken depends upon the question whether the verdict, involving a finding by the jury that the discharge of the defendant was justifiable, is to stand; for if the discharge was justifiable the conditions requiring an extension never arose, and it follows that the action was not brought prematurely. In other words, the issues became narrowed down to the single one of whether the plaintiff below was justified in discharging Minzey from their employment. If they were justified in discharging him from their employment, then manifestly they were released from any further obligation under this contract of July 18, to employ him or to receive payment in services as therein provided, or to grant an extension, as therein provided, and it might then insist upon compliance with the exact terms of the promissory note.

It is our conclusion that the verdict of the jury upon this issue is not against the weight of the evidence.

It is contended by the defendant in error that Mr. Minzey was unskillful, careless and unsatisfactory as an employe; that his work was not well done; that it was not as well done as he might have done it had he tried, and that his course as an employe was unsatisfactory and a damage to them; therefore they discharged him. And they also insist that in keeping an account of his expenses which they were to pay and which they did pay, he put in bills for expenses that he did not incur (in one case especially, the sum of $7.50), and that they were justified in discharging him on account of his bad work and on account of his dishonesty.

That he was dishonest in presenting bills for his expenses is not charged in the pleadings filed on behalf of defendant in error. That is not set forth as a ground for his discharge. If it had been insisted upon on his behalf, perhaps that could not have been proven upon the trial or submitted to the jury without an amendment to the pleadings.

But no objection was made to the introduction of evidence on this point (except upon the examination of Mr. Minzey, which will be noticed presently), and no objection was made to the submission of this issue to the jury (except as to the manner and time of such submission, also to be noticed presently), and it is now too late to make such objection or to complain for the first time.

Some objection was made when inquiry was made of Mr. Minzey himself, whether he had not put in his bill for expenses that he had not incurred, but he answered, and his answer, in our opinion, was not prejudicial to him, consequently the inquiry could not have been prejudicial. He answered that he put in his bills for all his expenses and for no more than the expenses that he had incurred. The inquiry was pursued, but the answers of Mr. Minzey in each instance were of a character that could not have prejudiced him before the jury. On the other hand, when inquiry was made of the witness who charged him with falsifying the amount of his account, no objection was

made to his testifying; and when the court came to submit this issue to the jury, objection was not made to it on the ground that it was not an issue presented in the case, but objection was made solely upon the ground that it was submitted at a time and in a manner which gave it undue prominence. The charge of the court having been completed and the jury having been excused for dinner and having come back from dinner, the court's attention having been called to it, the court stated to the jury that he had overlooked a matter, and then proceeded to charge them upon this point. It can not be maintained that what the court said was improper or erroneous. But it is said that undue prominence was given to it. We do not see how the court could well have done otherwise, upon being apprised of this oversight, than to correct it in the way it did, and it seems to us that it was not necessary for the court to repeat the whole charge in order that this might be injected somewhere in such a way as to avoid directing the special attention of the jury to it; and we can not see that the jury, after retiring, must have given undue prominence or consideration to this subject. It was a prominent matter in the case; the real issue in the case was as to the method in which the defendant, Minzey, had done his work, the way he had served his employer, both in the matter of work and in the matter of rendering his account; so it would be quite proper for the jury to give it much prominence and careful consideration.

It is said that on the trial the court erred in allowing the use, by the plaintiff below, of the property statement that had been made some time before the transaction in which these papers were executed, by the defendant, Minzey, to the plaintiff below. It is not apparent to us that that property statement was competent evidence. We think that its use amounted to the introduction of evidence upon an immaterial matter, and probably a matter prejudicial to the defendants below. But when we come to consider the way it was brought in, we think the defendants in error can not complain; we think they are responsible for the presentation of this immaterial issue. When Mr. Minzey was upon the witness stand in his own behalf, he was inquired

of by his counsel, Mr. Vickery, as to his condition in life at the time he entered into this contract.

"Q.    At the time this note was given were you a married man?    A.    I was; yes, sir.

"Q.    And how many members were there of your family?"

Mr. McKnight, on behalf of the plaintiff, objected to the question.

"COURT:    What do you claim for that?

"MR. VICKERY:    It is a circumstance to go to this jury in determining the question whether the defendant, or rather the plaintiff here, has been put in any more serious position by the surrender of this property or by the failure to collect on this note, than they would have been if they had not received this property."

The court said:

"Perhaps as to how many he had in his family is not important, but I think, under your view, that it may be competent to show that he was at that time the head of a family and that he had no homestead.    If you wish to show those facts at the time of the making of this contract, you may do so, providing you couple with it some testimony that that fact was known to the opposite party."

Then the examination proceeds:

"What is the fact at the time of making this contract—were you a resident of Ohio?    A.    Yes, sir.

"Q.    And were you a married man at the head of a family? A.    Yes, sir.

"Q.    You may tell the jury at that time whether or not you owned a homestead?    A.    I did not; no, sir.

"Q.    Where were you living at that time?    A.    I was living in Bellevue.

"Q.    Whereabouts in Bellevue were you living?    A.    On Greenwood street or Greenland street—I forget the name.

"Q.    Was your wife the owner of a homestead at that time? A.    She was not; at the time this note was delivered, you say?

"Q.    Yes, sir, at that time?    A.    She was not to the best of my recollection.

"Q.    Do you know whether or not Mr. Ullman knew of your property, or what property you had, or what property you didn't have—your financial condition?    A.    I don't know."

The court below seemed to think that that would throw some light upon the issue, though we can not discover how it could; but the court admitted it on condition that the defendants below should establish that the plaintiff knew of these conditions. Thus far they had failed to show that the plaintiff knew anything about it.    Thereupon the cross-examination of Minzey proceeds:

"At the time you entered into the original contract with the representative of the Marcy Manufacturing Company, you owned a homestead then, didn't you?   A.   May I inquire what you mean by 'original contract'?

"Q.   Yes, sir, this contract right here; just look at that and see if you didn't sign that?   (Witness shown paper).   Look at the back of it there and see if you didn't make a property statement there?   A.   At the time this paper was signed, I owned property, yes, sir.

"Q.   That is your signature there at the bottom, isn't it? A.   Yes, sir.

"Q.   And that is your wife's signature, isn't it?   A.   To the best of my knowledge it is, yes, sir.

"Mr. VICKERY:   I object to the introduction of this for the reason that it has nothing to do with this contract.

"COURT:   It does not quite seem to me that the circumstances you are seeking to elicit throw any light upon the contract.   I don't quite see that it helps to show whether these two papers were one transaction, or whether they were separate.   I think this is irrelevant.   I do not think this would help the issues.

"Mr. McKNIGHT:   I now ask the court to permit the reading of this contract to the jury for the purpose of cross-examination of the witness on the stand upon it.

"COURT:   The request will be overruled for the present.

Mr. McKNIGHT:   I also ask the court to permit me to read the statement on the back of this contract to the jury for the purpose of cross-examining the witness so that I may intelligently cross-examine the witness on the stand in regard to it.

"COURT:   You may cross-examine him as to that.   You may ask him whether he did not make such a statement.   You may submit it to him and see.   I will permit you to use that statement.

"Mr. VICKERY:   We except to the ruling of the court in permitting the introduction of the property statement made in January of 1899."

It is urged that because of this property statement having gone to the jury prejudice resulted to Minzey. As I said before, it seems to us that this whole matter of the financial condition of Minzey was immaterial; but it was introduced in the first instance by him or on his behalf, and having presented that kind of immaterial matter, he can not complain now that he was cross-examined upon it, and that the cross-examination took the range that it did.

It is said that there was some error in the charge, in the construction the court put upon this contract, but in looking at that, our view of the matter is that if the court erred at all (and we are not quite prepared to agree with the court in its construction of the contract), the error was not prejudicial to the plaintiff in error. We have very serious doubt whether the court was right in holding that Minzey had a right to draw his wages from time to time while remaining in the employment of the plaintiff below, and that he might also insist upon paying the note as it fell due according to its terms. We are rather inclined to think that the two papers, when read together, amount to a contract that he was to be employed a sufficient length of time, at least, to enable him to discharge this indebtedness with his wages, and that his wages as earned should have been so applied. But the company did not insist upon their being so applied. His wages that he earned were paid over to him, and we can see nothing in the view taken by the court that was at all prejudicial to Minzey, and we feel very confident in our own minds that the result reached was correct and just, and the judgment of the court of common pleas will be affirmed.

*Jesse Vickery,* for plaintiff in error.

*C. A. Wilt* and *McKnight & Thomas,* for defendant in error.